## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

_____

### MICHELE A. CORNELIUS

*Appellant,*

v.

### CVS PHARMACY, INC.,
### NEW JERSEY CVS PHARMACY, L.L.C., AND
### SHARDUL PATEL,

*Appellees.*

_____

On Appeal from the United States District Court
for the District of New Jersey,
No. 2:23-cv-1858-SDW-AME
(Honorable Susan D. Wigenton, U.S.D.J.)

_____

## BRIEF OF AMICUS CURIAE IN SUPPORT OF APPELLANT
_____

Rohan Shetty
Jaqueline Aranda Osorno
Shelby Leighton
Public Justice
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 797-8600
jaosorno@publicjustice.net
rshetty@publicjustice.net
sleighton@publicjustice.org
*Counsel for Amicus Curiae*

**DISCLOSURE STATEMENT**

In accordance with Rule 26.1(a) of the Federal Rules of Appellate Procedure and Third Circuit Rule 26.1, the undersigned certifies that there is no publicly traded company or corporation with an interest in the outcome of this case that has not already been disclosed to this Court.

Dated: January 29, 2024

/s/ Rohan Shetty_____
Rohan Shetty
*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................... i

TABLE OF AUTHORITIES ................................................................................. iii

INTEREST OF AMICUS CURIAE ........................................................................ 1

INTRODUCTION .............................................................................................. 2

ARGUMENT ..................................................................................................... 4

I.  THIS CASE REATES TO A "SEXUAL HARRASSMENT DISPUTE"
    UNDER EFASASHA AND THEREFORE IS EXEMPT FROM
    ARBTRATION .......................................................................................... 4

    A.  The Phrase "Sexual Harassment Dispute" in EFASASHA Was
        Intended to Have Broad Scope and is Not Limited to Harassment Based
        on Sexual Desire ............................................................................... 4

    B.  Both State and Federal Law Define Sexual Harassment to Include
        Conduct that is Not Motivated by Sexual Desire .................................. 7

II. EFASASHA APPLIES BECAUSE THE DISPUTE AROSE AFTER THE
    STATUTE'S EFFECTIVE DATE .................................................................. 9

CONCLUSION ................................................................................................. 18

COMBINED CERTIFICATION ........................................................................... 19

CERTIFICATE OF SERVICE .............................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alston v. Countrywide Fin. Corp.*,
   585 F.3d 753 (3d Cir. 2009) ...............................................................................10

*Barnes v. Festival Fun Parks, LLC*,
   No. 3:22-CV-165, 2023 WL 4209745 (W.D. Pa. June 27, 2023) ...............13, 16

*Bibby v. Philadelphia Coca Cola Bottling Co.*,
   260 F.3d 257 (3d Cir. 2001) .................................................................................7

*Burlington Indus., Inc. v. Ellerth*,
   524 U.S. 742 (1998)............................................................................................14

*Centifanti v. Nix*,
   865 F.2d 1422 (3d Cir. 1989) .............................................................................11

*Corley v. United States*,
   556 U.S. 303 (2009)............................................................................................15

*Delo v. Paul Taylor Dance Found., Inc.*,
   No. 22-CV-9416 (RA), 2023 WL 4883337 (S.D.N.Y. Aug. 1,
   2023) .....................................................................................................................6

*Durham Life Ins. Co. v. Evans*,
   166 F.3d 139 (3d Cir. 1999) .................................................................................8

*E.E.O.C. v. Boh Bros. Const. Co.*,
   731 F.3d 444 (5th Cir. 2013) ...............................................................................8

*Famuyide v. Chipotle Mexican Grill, Inc.*,
   No. CV 23-1127, 2023 WL 5651915 (D. Minn. Aug. 31, 2023) ...............*passim*

*Flizack v. Good News Home For Women, Inc.*,
   346 N.J. Super. 150 (App. Div. 2001) ..................................................................8

*Friel v. Mnuchin*
474 F. Supp. 3d 673, 692 (E.D. Pa. 2020)............................................................7

*Garcia v. United States*,
469 U.S. 70 (1984)..............................................................................................11

*Hodgin v. Intensive Care Consortium, Inc.*,
No. 22-81733-CV, 2023 WL 2751443 (S.D. Fla. Mar. 31, 2023) ...11, 12, 14, 16

*Johnson v. Everyrealm, Inc.*,
657 F. Supp. 3d 535 (S.D.N.Y. 2023) ...................................................6, 9, 10, 16

*McDonough v. Smith*,
139 S. Ct. 2149 (2019)........................................................................................11

*Morgan v. Sundance*,
142 S. Ct. 1708 (2022)..........................................................................................1

*Muench v. Twp. of Haddon*,
255 N.J. Super. 288, 605 A.2d 242 (App. Div. 1992).........................................9

*Newcombe-Dierl v. Amgen*,
No. CV222155DMGMRWX, 2022 WL 3012211 (C.D. Cal. May
26, 2022) ............................................................................................................15

*Olivieri v. Stifel, Nicolaus & Co.*,
No. 1:21-cv-0046, 2023 WL 2740846 (E.D.N.Y. Mar. 31, 2023) ......................1

*Oncale v. Sundowner Offshore Servs., Inc.*,
523 U.S. 75 (1998)................................................................................................7

*Page v. United States*,
729 F.2d 818 (D.C. Cir. 1984).............................................................................11

*Palmer v. Johns Island Post Acute, LLC*,
No. CV 2:22-3432-RMG-KDW, 2023 WL 4409038.........................................15

*Schiavo v. Marina Dist. Dev. Co., LLC*,
442 N.J. Super. 346, 390 (App. Div. 2015). ........................................................8

iv

*Silverman v. DiscGenics, Inc.*,
No. 222CV00354JNPDAO, 2023 WL 2480054 (D. Utah Mar. 13, 2023) ....................................................................................12, 13

*Southwest Airlines Co. v. Saxon*,
596 U.S. 450 (2022)...........................................................................10

*Turner v. Tesla, Inc.*,
No. 23-CV-02451-WHO, 2023 WL 6150805 (N.D. Cal. Aug. 11, 2023) .................................................................................................6

*Watson v. Blaze Media LLC*,
No. 3:23-CV-0279-B, 2023 WL 5004144 (N.D. Tex. Aug. 3, 2023) .................6

*Zinsky v. Russin*,
No. 2:22-CV-547, 2022 WL 2906371 (W.D. Pa. July 22, 2022)......................15

**Statutes**

9 U.S.C. 401 ...................................................................................4, 9

9 U.S.C. § 401(4) .............................................................................3, 5

9 U.S.C. §§ 401(4), 402 ........................................................................3

9 U.S.C. § 401, note ...........................................................................10

9 U.S.C. § 402 ....................................................................................16

9 U.S.C. § 402(a) ..............................................................................2, 6

**Other Authorities**

168 Cong. Rec. H991 (daily ed. Feb. 7, 2022) (statement of Rep. David Scott) ....................................................................................5

168 Cong. Rec. H992 (daily ed. Feb. 7, 2022) (statement of Rep. Jerrold Nadler) ...................................................................................6

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, H.R. 4445, 117th................................................................5

Ending Forced Arbitration of Sexual Assault and Sexual Harassment
Act of 2021, Pub. L. No. 117-90, 136 Stat. 26, 9 U.S.C. §§ 401-
402............................................................................................................2, 14

H.R. Rep. No. 117-234 (2022)................................................................................16

Press Release, Sen. Kirsten Gillibrand, Gillibrand, Graham Celebrate
Senate Passage Of Landmark Bill To Void And Prevent Forced
Arbitration Agreements For Sexual Harassment And Sexual
Assault (Feb. 10, 2022),
https://www.gillibrand.senate.gov/news/press/release/gillibrand-
graham-celebrate-senate-passage-of-landmark-bill-to-void-and-
prevent-forced-arbitration-agreements-for-sexual-harassment-and-
sexual-assault ..........................................................................................................2

LLC, 442 N.J. Super. 346, 390 (App. Div. 2015) ...................................................8

No. 2:22-CV-3432-RMG, 2023 WL 4117366 (D.S.C. June 22, 2023)...................15

**INTEREST OF AMICUS CURIAE**

Public Justice is a national public interest advocacy organization that fights against abusive corporate power and predatory practices, the assault on civil rights and liberties, and the destruction of the earth's sustainability. The organization maintains an Access to Justice Project that pursues high-impact litigation and advocacy efforts to remove procedural obstacles that unduly restrict the ability of workers, consumers, and people whose civil rights have been violated to seek redress in the civil court system. Towards that end, Public Justice has a longstanding practice of fighting against the unlawful use of mandatory arbitration clauses that deny workers their day in court. Indeed, Public Justice recently won a unanimous Supreme Court victory in *Morgan v. Sundance*, 142 S. Ct. 1708 (2022), in which Taco Bell workers challenged the enforcement of a mandatory arbitration agreement. Additionally, Public Justice has specifically advocated for full implementation of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (EFASASHA), including filing amicus briefs regarding the interpretation and scope of EFASASHA in *Johnson v. Everyrealm*, *Inc.*, No. 1:22-cv-06669, 2023 WL 2216173 (S.D.N.Y. Feb. 24, 2023) and *Olivieri v. Stifel, Nicolaus & Co.*, No. 1:21-cv-0046, 2023 WL 2740846 (E.D.N.Y. Mar. 31, 2023).

# INTRODUCTION[1]

On March 3, 2022, President Biden signed into law the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFASASHA"), Pub. L. No. 117-90, 136 Stat. 26, 9 U.S.C. §§ 401-402. The law, passed with bipartisan support, gives victims of sexual assault or sexual harassment the right to pursue their claims in court instead of being forced into secretive, unfair arbitration procedures. Specifically, the law says that "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which . . . relates to [a] sexual assault dispute or [a] sexual harassment dispute." 9 U.S.C. § 402(a). The new law, heralded as "one of the most significant workplace reforms in the last 50 years," ensures that survivors have access to justice and that employers cannot continue to sweep sexual misconduct under the rug.[2]

Now that this historic law has been enacted, the meaning of its text is being addressed in the courts. This case raises two important issues that have yet to be decided by this Court or any other court of appeals: (1) the scope of the Act's

---

[1] No party's counsel authored this brief in whole or in part. No party, party's counsel or person—other than amicus curiae, their members, or their counsel—contributed money that was intended to fund preparing or submitting this brief.

[2] Press Release, Sen. Kirsten Gillibrand, Gillibrand, Graham Celebrate Senate Passage Of Landmark Bill To Void And Prevent Forced Arbitration Agreements For Sexual Harassment And Sexual Assault (Feb. 10, 2022), https://www.gillibrand.senate.gov/news/press/release/gillibrand-graham-celebrate-senate-passage-of-landmark-bill-to-void-and-prevent-forced-arbitration-agreements-for-sexual-harassment-and-sexual-assault.

definition of "sexual harassment dispute," and (2) what it means for a "dispute" to "arise" after the effective date of the Act.

First, as discussed in Section I, although the Act defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law," 9 U.S.C. § 401(4), the district court erroneously applied a much narrower definition of "sexual harassment" than the federal and state laws that apply to this case. Indeed, it did not even analyze the definition of "sexual harassment" under New Jersey law, despite Appellant raising state-law claims. And it ignored the Act's broad applicability to not just the unlawful conduct itself, but any dispute "related to" that conduct and any "case" related to that dispute. 9 U.S.C. §§ 401(4), 402. Because Appellant alleges conduct that constitutes sexual harassment under both federal and state law, this Court should reverse the district court's holding that this case was not exempt from arbitration under EFASASHA.

Second, as discussed in Section II, if this Court does reverse the district court's holding regarding the scope of "sexual harassment dispute," it should address the question left unanswered by the district court of when this dispute arose relative to the passage of EFASASHA. Because the dispute in this case arose after EFASASHA

was enacted when Appellant filed her charge of discrimination with the EEOC in August 2022, it is subject to the Act and exempt from arbitration.

## ARGUMENT

## I. THIS CASE RELATES TO A "SEXUAL HARRASSMENT DISPUTE" UNDER EFASASHA AND THEREFORE IS EXEMPT FROM ARBITRATION

The district court wrongly concluded that the conduct alleged by Appellant did not amount to a "sexual harassment dispute" under EFASASHA because it did not involve unwelcome sexual advances or behavior motivated by sexual desire. App. 87. The court was wrong for two reasons. First, it failed to recognize the broad range of conduct that Congress intended to include within EFASASHA's scope. Second, in reaching its narrower definition of sexual harassment, it misinterpreted Title VII case law and ignored the allegations in the complaint of violations of New Jersey law.

### A. The Phrase "Sexual Harassment Dispute" in EFASASHA Was Intended to Have Broad Scope and is Not Limited to Harassment Based on Sexual Desire

EFASASHA broadly defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. 401. That reference to existing law reflects a conscious choice to incorporate the decades of precedent regarding the scope of

conduct prohibited by those laws. Indeed, the definition of "sexual harassment dispute" in the Act originally would have been limited to conduct such as sexual advances, physical contact, sexual attention, or quid pro quo harassment. *See* Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, H.R. 4445, 117th Cong. § 401(4) (July 16, 2021). But the definition was amended, and now "encompasses a broader array of harassing conduct" than originally included in the bill because it incorporates the full scope of conduct that constitutes sexual harassment under state and federal law. 168 Cong. Rec. H991 (daily ed. Feb. 7, 2022) (statement of Rep. David Scott).

More generally, in addition to incorporating the full scope of state and federal law, the language of EFASASHA, particularly when combined with its legislative history, demonstrates that the phrase "sexual harassment dispute" was intended to have an expansive meaning. The definition of "sexual harassment dispute" in EFASASHA includes any "dispute **relating to** conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4) (emphasis added). As Representative Nadler, Chair of the House Judiciary Committee, the House committee with jurisdiction over the Act, explained during debate over the language of this definition, it "mak[es] clear that anything related to sexual harassment or assault as currently defined by law is covered by this bill. This

would include retaliation or any other misconduct that gives rise to the underlying claim alleging a violation of these laws." 168 Cong. Rec. H992 (daily ed. Feb. 7, 2022) (statement of Rep. Jerrold Nadler).

Moreover, EFASASHA applies to any "case" that "relates to" the "sexual harassment dispute." 9 U.S.C. § 402(a). Thus, so long as the complaint alleges some conduct that meets the definition of "sexual harassment dispute," the entire case is exempt from arbitration. *See Johnson v. Everyrealm, Inc.,* 657 F. Supp. 3d 535, 561 (S.D.N.Y. 2023); *Turner v. Tesla, Inc.,* No. 23-CV-02451-WHO, 2023 WL 6150805, at *1 (N.D. Cal. Aug. 11, 2023); *Delo v. Paul Taylor Dance Found., Inc.,* No. 22-CV-9416 (RA), 2023 WL 4883337, at *5 (S.D.N.Y. Aug. 1, 2023); *Watson v. Blaze Media LLC*, No. 3:23-CV-0279-B, 2023 WL 5004144, at *2 (N.D. Tex. Aug. 3, 2023). Here, because Appellant's complaint includes allegations of conduct that constitutes sexual harassment under Title VII and the New Jersey Law Against Discrimination (NJLAD), including being treated differently than men, replaced with a man while she was still on the job, and being treated rudely and disrespectfully, this is at the very least a "case" that "relates to" a "dispute relating to" those claims.

**B.** **Both State and Federal Law Define Sexual Harassment to Include Conduct that is Not Motivated by Sexual Desire**

The district court not only failed to consider EFASASHA's broad scope, but it misinterpreted the type of conduct that constitutes sexual harassment under federal law, reasoning that "for the purposes of a Title VII claim, sex discrimination differs from sexual harassment." *Id.* at 6. In support of this proposition, the district court cited a single case, *Friel v. Mnuchin*, in which another district judge used the phrases "sexual harassment" and "non-sexual harassment" to distinguish between harassment motivated by sexual desire and harassment motivated by the plaintiff's sex, while acknowledging that both types of sex-based harassment are actionable under Title VII. 474 F. Supp. 3d 673, 692 (E.D. Pa. 2020) (explaining that, to succeed on Title VII hostile work environment claim, plaintiff must show that "non-sexual harassment" was "directed at him because he is male"). But regardless of the imprecise terms used by one judge, Title VII caselaw, including binding Supreme Court precedent, makes clear that sexual harassment includes conduct beyond that motivated by sexual desire. *See, e.g.*, *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("[H]arassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex."); *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 264 (3d Cir. 2001) (explaining that "same-

sex sexual harassment" could be demonstrated by showing "the harasser was motivated by sexual desire, the harasser was expressing a general hostility to the presence of one sex in the workplace, or the harasser was acting to punish the victim's noncompliance with gender stereotypes"); *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 148 (3d Cir. 1999) (holding that district court properly considered events that were not motivated by sexual desire in finding sexual harassment under Title VII); *see also, e.g.*, *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 460 (5th Cir. 2013) ("Although sexual harassment must be based on sex, it need not be motivated by sexual desire.").

Further, Appellant also alleged harassment under the New Jersey Law Against Discrimination (NJLAD). App. 14. The district court wholly failed to analyze whether the definition of sexual harassment under that statute includes conduct that is not motivated by sexual desire. Had the court engaged in this necessary analysis, it would have found that, under New Jersey state law, "[a] claim for sexual harassment does not require that the defendant be motivated by the desire for sexual gratification. Rather, the requisite causal connection is satisfied if the offensive act would not have occurred but for the victim's gender." *Flizack v. Good News Home For Women, Inc.*, 346 N.J. Super. 150, 161 (App. Div. 2001); *see also Schiavo v. Marina Dist. Dev.* Co., LLC, 442 N.J. Super. 346, 390 (App. Div. 2015) (recognizing

claim for "sexual harassment" based on gender stereotyping). As the New Jersey Appellate Division explained, "whether the offending conduct is in the form of sexual advances or intimidation and hostility toward a woman solely because she is a woman, the result is the same. Sexual harassment, whatever form it takes, imposes a sense of degradation, closes or discourages employment opportunity for women (or men) and essentially deprives them of 'self-respecting employment.'" *Muench v. Twp. of Haddon*, 255 N.J. Super. 288, 298, 605 A.2d 242, 247 (App. Div. 1992). Here, Appellant alleges she was subjected to severe or pervasive conduct that included being demeaned and treated with hostility and disrespect. App. 6-7. Because there is no doubt that conduct motivated by a plaintiff's sex but not by sexual desire, such as in this case, is "conduct alleged to constitute sexual harassment" under New Jersey law, Appellant's allegations fall within the definition of "sexual harassment dispute" in EFASASHA and all her claims are exempt from arbitration. 9 U.S.C. 401. *See Johnson v. Everyrealm, Inc.,* 657 F. Supp. 3d 535, 561 (S.D.N.Y. 2023).

## II. EFASASHA APPLIES BECAUSE THE DISPUTE AROSE AFTER THE STATUTE'S EFFECTIVE DATE

The district court did not decide whether this dispute arose after the effective date of EFASASHA, concluding that was "of no moment" due to its holding that

this was not a case relating to a sexual harassment dispute within the meeting of the Act. App. 87. But if this Court does reach that question,[3] it should hold that, because Ms. Cornelius first filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in August 2022, well after the enactment of EFASASHA in March 2022, this dispute arose after the effective date of the Act. That conclusion comports with EFASASHA's plain language, structure, and remedial purpose.

Start with the plain language. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 759 (3d Cir. 2009). The EFASASHA covers "any *dispute or claim* that arises or accrues on or after the date of enactment of this Act." 9 U.S.C. § 401, note (emphasis added).[4] The terms "dispute" and "claim," which are not defined in EFASASHA, must be given their "ordinary, contemporary, common meaning." *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022) (quotation marks and citation omitted). And because Congress extended coverage to a "claim . . that

---

[3] If this Court holds that this case relates to a sexual harassment dispute under the EFASASHA— which it should for the reasons described above—it should also decide the purely legal question whether this dispute arose after the enactment of the EFASASHA. Otherwise, on remand, the district court will have to decide that issue, the losing party will likely appeal, and this case would again burden this court's docket.

[4] *See Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 560 (S.D.N.Y. 2023) ("It is of no moment that this provision was later codified as a statutory note, as opposed to a statutory subsection, by the Office of Law Revision Counsel. The provision is congressionally enacted text.") (quotation marks and citations omitted).

accrues" *or* a "dispute . . . that [] arises" after the Act, each term "in the disjunctive" must "be given separate meaning[]." *Garcia v. United States*, 469 U.S. 70, 73 (1984).

The meaning of "claim . . . accrues" is well-established. For federal causes of action, like Ms. Cornelius's Title VII claim, "the time at which [the] claim accrues is a question of federal law, conforming in general to common-law tort principles." *McDonough v. Smith,* 139 S. Ct. 2149, 2155 (2019). Under federal law, "[i]t is well-settled that [w]hen a tort involves continuing injury, the cause of action accrues . . . at the time the tortious conduct ceases." *Page v. United States*, 729 F.2d 818, 821 (D.C. Cir. 1984) (citing cases); *Centifanti v. Nix*, 865 F.2d 1422, 1433 (3d Cir. 1989) (observing that plaintiff's "action continues to accrue on each day of the alleged wrong"). "[D]ispute . . .arises," then, must mean something different than when the claim accrues, *i.e.*, when the underlying "conduct ceases."

As one court recently explained in interpreting EFASASHA, "[a] dispute entails disagreement, not just the existence of an injury (which would be the claim accruing)." *Hodgin v. Intensive Care Consortium, Inc.*, No. 22-81733-CV, 2023 WL 2751443, at *2 (S.D. Fla. Mar. 31, 2023) (citing *Dispute*, Merriam-Webster's Online Dictionary 2023, https://www.merriam-webster.com/dictionary/dispute). A dispute is "an assertion of a right, claim, or demand on one side, met by contrary claims or allegations on the other," or "the subject of litigation." *Famuyide v. Chipotle*

11

*Mexican Grill, Inc.*, No. CV 23-1127 (DWF/ECW), 2023 WL 5651915, at *3 (D. Minn. Aug. 31, 2023) (citing Dispute, Black's Law Dictionary (6th ed. 1990)). In other words, "a dispute comes into being when a person asserts a right, claim, or demand and is met with disagreement on the other side." *Id*.; *see also Silverman v. DiscGenics, Inc.*, No. 222CV00354JNPDAO, 2023 WL 2480054, at *2 (D. Utah Mar. 13, 2023) (dispute under EFASASHA arose when "plaintiffs formally accused [defendant] of wrongdoing, and [defendant] attempted to defend itself from these charges.").

The throughline from these definitions is that a "dispute . . . arises" when a plaintiff submits an external complaint alleging employer liability, like Ms. Cornelius's EEOC charge here. A string of courts, analyzing EFASASHA, have found exactly that. *See Famuyide*, 2023 WL 5651915, at *3 (holding that "the actual dispute between Famuyide and Chipotle—the moment when they took opposing positions—arose when Famuyide filed her complaint in state court"); *Silverman*, 2023 WL 2480054, at *2 (holding that "a dispute concerning the plaintiffs' pretermination allegations of discrimination and retaliation arose when the plaintiffs initiated proceedings before the [Utah Antidiscrimination and Labor Division]"); *Hodgin*, 2023 WL 2751443, at *2 ("I find that Plaintiff's dispute arose when she filed Charges of Discrimination against her employer with the EEOC."). As in those

cases, the dispute here arose when Ms. Cornelius filed a charge of discrimination with the EEOC in August 2022. At that juncture, Ms. Cornelius "formally accused" CVS of discriminatory conduct through a complaint that "assert[ed] [] a right." *Silverman*, 2023 WL 2480054, at *2; *Famuyide*, 2023 WL 5651915, at *3 (citing Dispute, Black's Law Dictionary (6th ed. 1990)).

Appellees will likely argue that a dispute instead arises when the plaintiff's injury first occurs. *See Barnes v. Festival Fun Parks, LLC*, No. 3:22-CV-165, 2023 WL 4209745, at *10 (W.D. Pa. June 27, 2023) ("the use of dispute in [EFASASHA] clearly refers to the discriminatory conduct underlying the Complaint . . . a dispute arises when the conduct complained of occurs"). But that interpretation would mean that a dispute could arise before a defendant "was even aware of the harassment and before [a plaintiff] even made any allegations of harassment." *Silverman*, 2023 WL 2480054, at *4. That makes little sense. "Were the Court to conclude that a dispute arises the moment the sexual assault or harassment occurs, the Court would be assuming the existence of a conflict that has not yet materialized. In reality, disputes may, and often do, arise after the disputed conduct or injury occurs." *Id.*

The distinction between injury and dispute is embedded into Title VII jurisprudence. In a typical harassment case, the plaintiff and the employer should start out on the same side — trying to address and correct the harassment. Indeed,

employers can avoid liability by showing that they took reasonable care to prevent harassment and the employee did not take advantage of corrective measures. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). It is only once an employee disputes the adequacy of an employer's response — by, for instance, filing an EEOC charge — that there is a live "dispute." *See Famuyide*, 2023 WL 5651915, at *3 ("In this case, while the conduct in dispute occurred earlier, the actual dispute between Famuyide and Chipotle—the moment when they took *opposing* positions— arose when Famuyide filed her complaint in state court.") (emphasis added); *Hodgin*, 2023 WL 2751443, at *2 (holding that "the dispute had arisen because the Plaintiff was now in an adversarial posture with her employer in a forum with the potential to resolve the claim.").

What is more, EFASASHA provides structural clues that a dispute is not synonymous with an injury. EFASASHA applies to a case that relates to a "sexual assault dispute," defined as "*a dispute* involving a nonconsensual act or sexual conduct," or a "sexual harassment dispute," defined as "*a dispute* relating to conduct that is alleged to constitute sexual harassment." 9 U.S.C. §§ 401, 402 (emphases added).

If the word "dispute" referred only to the underlying conduct, such as sexual harassment, then Congress's use of the word "dispute" within the above definitions

14

would be superfluous. As one court observed, under that logic, a "'sexual assault dispute' would merely mean 'a nonconsensual act of sexual conduct,'" and "'a sexual harassment dispute' would mean 'conduct that is alleged to constitute sexual harassment.'" *See Famuyide*, 2023 WL 5651915, at *4. But that is not what Congress wrote. Consequently, a "dispute" must necessarily be different than the underlying discriminatory conduct. *See Corley v. United States*, 556 U.S. 303, 314 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.").

Contrary authority lacks persuasive weight. Much of that authority fails to distinguish between the terms "claim" and "dispute." *See, e.g., Newcombe-Dierl v. Amgen*, No. CV222155DMGMRWX, 2022 WL 3012211, at *5 (C.D. Cal. May 26, 2022) (failing to recognize or analyze the term "dispute"); *Zinsky v. Russin*, No. 2:22-CV-547, 2022 WL 2906371, at *3 (W.D. Pa. July 22, 2022) (same); *Palmer v. Johns Island Post Acute, LLC*, No. CV 2:22-3432-RMG-KDW, 2023 WL 4409038, at *8 (D.S.C. Mar. 7, 2023, report and recommendation adopted, No. 2:22-CV-3432-RMG, 2023 WL 4117366 (D.S.C. June 22, 2023) (same).

Other cases misconstrue EFASASHA's structure. For example, one court observed that EFASASHA elsewhere provides that "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a *case . . . filed* under

Federal, Tribal, or State law." 9 U.S.C. § 402 (emphasis added). The court concluded that reading "dispute . . . arise" to be synonymous with "case . . . filed" would be incongruous because where Congress wanted to specify case filing as the key juncture, it explicitly did so. *Barnes*, 2023 WL 4209745, at *9.

But that logic fails on its own terms because "dispute . . . arise" is plainly broader than "case . . . filed." A "case" is "filed" *in court*. *See Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 559 (S.D.N.Y. 2023) (reviewing dictionaries and caselaw and concluding that "case" under the EFASASHA refers to "an overall legal proceeding filed in court"). By contrast, a dispute can — as here — arise upon the filing of a charge with an administrative agency or other pre-filing events. As one court observed, "dispute is a broad term that encompasses many forums," and "[t]here are many ways in which a party may formally notify another of potential allegations, claims, or demands." *Famuyide*, 2023 WL 5651915, at *3; *see also Hodgin*, 2023 WL 2751443, at *2 (concluding that a "dispute" requires an "adversarial posture," which was present upon filing of an EEOC charge).

There is, in short, no inconsistency in Congress's usage of different terms in different sections of a statute to mean different things. Indeed, Congress's use of the more capacious term "dispute" makes sense given EFASASHA's broad remedial purpose. *See, e.g.*, H.R. Rep. No. 117-234, at 4 (2022) (explaining that EFASASHA

aims to "restore access to justice for millions of victims of sexual assault or harassment who are currently locked out of the court system and are forced to settle their disputes against companies in a private system of arbitration that often favors the company over the individual.").

In sum, because Ms. Cornelius filed a charge with the EEOC after the enactment of EFASASHA, a "dispute" arose after the Act and Ms. Cornelius' suit cannot be compelled to arbitration.

**CONCLUSION**

For the foregoing reasons, amicus curiae urge this Court to find that this case is exempt from arbitration under EFASASHA and reverse the district court's order compelling arbitration.

January 29, 2024                              Respectfully Submitted,

                                                      */s/ Rohan  Shetty*
                                                      Rohan Shetty
                                                      Texas Bar #24136263
                                                      Jackie Aranda Osorno
                                                      Shelby Leighton
                                                      **PUBLIC JUSTICE**
                                                      1620 L Street NW, Suite 630
                                                      Washington, DC 20036
                                                      (202) 797-8600
                                                      rshetty@publicjustice.net
                                                      josorno@publicjustice.net
                                                      sleighton@publicjustice.net

                                                      *Counsel for Amicus Curiae*

## COMBINED CERTIFICATIONS

*Bar membership.* I am a member of the bar of the United States Court of Appeals for the Third Circuit.

*Word limit.* This document complies with the type volume requirements of Fed. R. App. P. 32(a)(7)(B) because it contains 3,826 words as calculated with the word-counting feature of Microsoft Office, excluding the portions of the document exempted by Fed. R. App. P. 32(f).

*Typeface and typestyle.* This document complies with the typeface and typestyle requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in 14-point Times New Roman font, which is a proportionally spaced typeface.

*Identical copies.* The text of the electronic brief is identical to the text in the paper copies.

*Virus check.* The electronic brief has been scanned for viruses with Bitdefender Endpoint Security software. No virus was detected by the software.

January 29, 2024                                    */s/ Rohan Shetty*
                                                    Rohan Shetty

                                                    *Counsel for Amicus Curiae*

**CERTIFICATE OF SERVICE**

I certify that the foregoing was served via the Court's electronic case management system upon all counsel of record.

January 29, 2024

/s/ Rohan Shetty
Rohan Shetty

*Counsel for Amicus Curiae*